WILLIAM WEBB, JR., Plaintiff, v. PATRICK O'ROURKE, JOSEPH CONCHADO, JEROME KRAKAUSKAS, and WILLIAM O'ROURKE, Defendants.

(*March* 12, 1963.)

LYNCH, J., sitting.

*John Biggs, III*, and *Joseph Geoghegan* (of Berl, Potter and Anderson) for Plaintiff.

*Sidney Balick* for all Defendants.

Superior Court for New Castle County, No. 658, Civil Action, 1962.

LYNCH, J.:

Plaintiff, a scout master, took his scout troop to Thompson's Bridge in this County, on May 19, 1962, for an overnight camp out. On May 20, 1962 plaintiff received a severe beating at the hands of defendants, residents of Philadelphia. He sues for damages for the injuries inflicted on him.

Defendants had come to the camp site and were apparently celebrating the birth of a child, born to the wife of one of the defendants; seemingly they took certain personal property of the boy scouts, and when the plaintiff inquired of the defendants whether they had taken that property, the defendants assaulted and severely beat the plaintiff. The assault was allegedly unprovoked. The plaintiff suffered severe personal injuries and brought this civil action against those he claims assaulted him.

As a result of the assault and battery on plaintiff, criminal proceedings were instituted against the defendants and they were placed under arrest and jailed. In time they made bail. The Grand Jury returned indictments on June 4, 1962. Previously, on May 20, 1962, complaints had been made before a Justice of the Peace against the defendants and they were taken into custody and held for criminal action in this Court and bail fixed for their release.

Plaintiff filed his civil suit on June 1, 1962. The record shows all defendants were served personally in this case, while at trials or on appearance for arraignment on the indictment.

Defendants have appeared specially for the purpose of moving to dismiss the complaints against them pursuant to Rule 12(b)(2)(5), Rules of the Superior Court, *Del. C.* on the ground that the Court lacks jurisdiction over their person, service of process having been insufficient in that it was made upon them when they were present in this jurisdiction only in compliance with criminal process, or in response to appear while they were out on bail.

This opinion has been prepared and is filed in the disposition of such motion to dismiss.

■ Defendants predicate their motion to dismiss on 11 *Del. C.* § 3524(a), which reads as follows:

"If a person comes into this State in obedience to a summons directing him to attend and testify in this State he shall not while in this State pursuant to such summons, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons."

This section is a part of the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, which was adopted in this state in 1937, Volume 41 *Del. Laws*, Ch. 214. By its very terms the statute is limited to witnesses; nowhere in the statute is any reference made to persons charged with commission of a crime. Obviously the statute is not applicable, and it cannot be the basis of any relief, such as defendants seek by their motion to dismiss. The defendants here were charged as parties.

There is a statement to be found in § 122 *Wooley, Delaware Practice,* that "parties to a suit, their attorneys, counsel

and witnesses are for the sake of public justice, privileged from arrest in civil actions, in going to, attending upon and returning from the Court". No authorities are cited, but in *In re Dickenson*, 3 Harr. 517 (Super. Ct. 1842), the Court ordered the discharge of a witness who has been subpoenaed to testify at a trial when the witness was served with civil process. In 20 A. L. R. 2d at page 165 the statement may be found:

"The rule that parties to civil actions, as well as witnesses and attorneys, are immune from service of process while attending court, is of very early origin. It is mentioned in the Year Books of England, as far back as Henry VI. At the outset, it seems to have been applied merely to prevent civil arrest of suitors, witnesses, and attorneys while before the bar of justice. But as the years passed, the rule was enlarged, until today full protection from all forms of process is generally accorded civil litigants, witnesses, and attorneys, while going to, attending, and returning from court, whether resident or nonresident of the jurisdiction."

It has to be noted that at common law the privilege or immunity from civil process was limited to civil causes; nothing can be found where the common law recognized the privilege as applicable in criminal matters.

The cases are in hopeless conflict as to whether a non resident involved in a criminal proceeding, as a party, has any immunity from civil process while in the state, either pursuant to arrest or in response to a bail bond conditioned upon the defendant's appearing for trial or arraignment. See generally, 42 *Am. Jur.*—Process—§§ 152 and 153; 72 *C. J. S.* Process § 82 and annotations in 14 A. L. R. 776, 40 A. L. R. 93, 46 A. L. R. 316 and 65 A. L. R., superseded by annotation in 20 A. L. R. 2d 160, 163, collecting a great number of cases.

We, of course, are not concerned with an instance where the defendants were here as witnesses when served. The Court

rules they were not here as witnesses, but were parties defend-
ant in criminal actions, arising while they were in this state
and for which criminal actions they were arrested while here
after the crime had been committed. We are not concerned with
situations where the criminal process was used fraudently or as
a ruse to get the defendants into this state or where they were
extradited from a foreign state. Seemingly the defendants
chose voluntarily to come here for the celebration of the birth
of a child to the wife of one of the defendants, and while here
for such purpose they took the occasion to assault the plaintiff.
It was while they were here in response to criminal process
arising from the assault incident that they were served with
civil process in the civil suit plaintiff brought against them to
recover for the damages they inflicted on him in the course of
assaulting him.

A reading and study of the many cases on the subject
lead only to confusion in one's thinking; it is not possible to
reconcile the various holdings—even those cases that stand for
either one or the other proposition. The Federal cases are of no
particular great help; they have settled on a rule and appar-
ently stand by it although the cases are not always clear just
why. Some cases involve statutes, which, of course, render them
inapposite.

The case for recognizing an immunity from civil process to
those involved in criminal prosecutions is well set forth by the
Maryland Court of Appeals in *Feuster v. Redshaw*, 157 Md.
302, 145 A. 560 (1929). In that case the Court said (145 A. at
562):

"No useful purpose will be served by stating and discuss-
ing these irreconcilable decisions of other appellate tribunals,
as our own reports illustrate the principles upon which the
question, whether or not a non-resident is exempt from service
of process issuing in an action instituted against him in a court
of this state while he is in attendance upon the trial of a crim-

inal proceeding either as the accused or as a witness, should be decided.

"The reason for the exemption is because it is grounded on public policy and necessary for the due administration of justice. The rule at once tends to assure the attendance of nonresident witnesses and suitors, and the free and complete presentation of the case in a trial in which the witness and the parties will not be distracted, harassed, or intimidated by the prospect of other litigation. So beneficial is the rule that the inclination of the court is to extend its scope. * * *

"These reasons are as applicable to criminal prosecutions as they are to civil actions, and, on principle, should have no different conclusion. The decisions, which hold that the exemption does not apply to parties arrested in criminal proceedings, put it usually on the ground that in a civil case the appearance of the parties and witnesses is purely voluntary, while the accused's attendance could be enforced by arrest, extradition, or other form of legal compulsion. It is inaccurate to say of a nonresident defendant that his appearance in a suit to defend his rights is wholly voluntary. He comes under the compulsion of interest or necessity. * * * And it is a sound principle of law that does not subject an accused party, while presumed by the law to be innocent, to the peril of a surrender of his privilege of being sued in a civil action in his own state, by appearing and defending himself in the jurisdiction where he is charged with the crime. However, the rationale of the rule does not depend upon the voluntary nature of the nonresident's appearance, but, as previously indicated, upon broad grounds of public policy and individual rights. * * *"

It may be observed that with the growth of the statutes providing for service of process on non residents in automobile accident cases it tends to lessen the persuasiveness of the reasoning used by the Maryland Court of Appeals.

The case for holding there is no immunity from civil proc-

ess to non residents involved in criminal proceedings was well stated by the Connecticut Supreme Court of Errors in *Ryan v. Ebecke*, 102 Conn. 12, 128 A. 14, 40 A. L. R. 88 (1925), which was premised on an opinion of the New York Court of Appeals, *Netograph Mfg. Co. v. Scrugham*, 197 N. Y. 377, 90 N. E. 962, 27 L. R. A., N. S., 333 (1910).

The Connecticut Court, after reviewing the New York case, said (128 A. 15):

"To extend, to persons under bail who attend court to be tried on criminal charges, the rule exempting parties and witnesses attending trial of a civil action, is properly said, in the extract just stated, to carry the rule beyond the reasoning upon which it is based. As a party or witness he could not be compelled to attend in a civil case, or to submit to the jurisdiction in which he attends. He comes voluntarily either to aid others as a witness, or to submit his own interests for decision. For this reason the common-law privilege of exemption from service of process is extended to him, by reasons of public policy. In a criminal case he aids the administration of justice in no way. Where custody of his person is obtained by arrest within the jurisdiction or through extradition, he is there to answer for a crime. He is in the state against his will. If kept within the state in an original arrest there, he is subject to the service of civil process, likewise if he is extradited and held in custody. If he gives bail and remains in the state, the same result follows. So we have the cases of an arrested resident, whether with or without bail, of an arrested nonresident who gives bail and remains in the state, of an extradited accused in custody, all subject to civil process, and only an arrested or extradited nonresident out on bail favored with the exemption. The reasoning of these cases which allow the exemption seems largely to apply to him the character of a witness, but this reason seems fallacious, since he would be obliged to attend (unless he forfeited his bail) whether or not he intended to testify as a witness. In most of the juris-

dictions in which the exemption allowed by the trial judge in the instant case is sustained, it is justified by the fact that the accused defendant is to become a witness for himself. But this reasoning would equally apply to an extradited defendant, yet it has been quite uniformly held that such a person is not exempt from service of civil process. The other ground for granting the immunity is that it makes for the due administration to have all obtainable parties present, and their presence should be encouraged. This is merely an extension of the reasons underlying the liberal rule in civil cases, and when applied to criminal cases apparently for the sake of having a uniform and comprehensive reason, neglects certain obvious distinction."

There is much to be said also for the observations made by the Supreme Court of Washington in *State ex rel Alexander-Coplin & Co. v. Superior Court for King County*, 186 Wash. 354, 57 P. 2d 1262 (1936).

For instance the Court said (57 P. 2d at 1263):

"There are few questions in the entire field of law that are more provocative of argument and more illustrative of differences in judicial opinion than the question of the validity of service of process upon nonresidents temporarily within a particular state. * * *"

Later, quoting from a prior Washington Court opinion, the Court said (57 P. 2d at 1264):

" 'In case a resident of one state voluntarily and for his own personal pleasure or profit goes into another jurisdiction and there injures some resident of that jurisdiction, for which injuries recovery is sought against him in an action brought in the state where the injuries were suffered, in which action process is served upon him, it seems unreasonable and illogical to contend that he is exempt from service of process because when the same was served upon him he was under arrest ten-

tatively charged with an offense growing out of the accident which is the basis of the action for damages, or even merely under subpoena to attend a coroner's inquest called investigate the accident in which he was one of the unfortunate participants.

" 'We do not care to extend the rule allowing immunity in certain cases as laid down by this court in *State ex rel. Gunn v. Superior Court, supra,* and we believe that to affirm the judgment of the superior court in this case would be to unreasonably extend such rule, in opposition to the weight of authority and against sound reason, which should wherever consistent with law, lead courts to uphold the right to the trial of an action for damages in the forum of the place where the damages were suffered, and where, presumably, more complete justice may be done to all parties concerned by reason of the presence of witnesses and the ease with which court and jury may view the locality where the injuries occurred.' "
The Court then made this comment (*Id.*):

"This language is most persuasive in its application to the facts before us. The relators came to this state for their own personal profit. In the conduct of their business, according to the complaint, they perpetrated a fraud upon a resident of this state, causing him great financial loss. The action brought against the relators is in the forum of the state and county where the damages were suffered, and, presumably, complete justice will more nearly be effected in that forum because of the availability of witness and the greater certainty of presenting to a jury all the facts inherent in the case."

██ After a careful review of the many conflicting decisions the Court chooses what it terms the Connecticut rule, and concludes by stating that it is for the General Assembly—not the Courts—to extend the privilege or immunity from service of civil process in cases now existent in civil litigation to cases involving defendants charged in criminal

prosecutions—if it seems desirable to adopt such a policy. No such privilege was recognized as a part of the common law when Delaware became a state and I do not consider the Courts as the body to extend the policy.

The Court considers that the better reasoned cases refuse to extend the common law privilege applicable to civil litigation to instances involving defendants in criminal cases. It is for this reason the Court sees fit to refuse the relief sought by these defendants.

For the reasons appearing herein defendants' Motion to Dismiss is denied. Counsel may present an order to that effect.